UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHONDA C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01932-DLP-TWP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Rhonda C. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits ("DWB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **AFFIRMS** the ALJ's decision denying the Plaintiff benefits.

### I. PROCEDURAL HISTORY

On May 8, 2017, Rhonda filed an application for Title II DIB and DWB[2]. (Dkt. 14-2 at 16, R. 15). Rhonda's application alleged disability resulting from complications from a heart attack in 2006, grand mal seizures, back problems,

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.
[2] The determination of disability for purposes of disabled widow's benefits is the same as that for determining disability for purposes of disability insurance benefits and follows the familiar five-step sequential evaluation. See 20 C.F.R. §§ 404.335(c), 404.1504.

breathing problems, and depression. (Dkt. 14-6 at 19, R. 357). The Social Security Administration ("SSA") denied Rhonda's claim initially on July 17, 2017, (Dkt 14-3 at 21, R. 116), and on reconsideration on September 25, 2017. (Id. at 42, R. 137). On December 1, 2017, Rhonda filed a written request for a hearing, which was granted. (Dkt. 14-4 at 35, R. 171). On February 11, 2019, Administrative Law Judge ("ALJ") William D. Pierson conducted a hearing where Rhonda appeared in person and vocational expert, Carrie Anderson, appeared telephonically. (Dkt. 14-2 at 57, R. 56). On May 1, 2019, ALJ Pierson issued an unfavorable decision finding that Rhonda was not disabled. (Dkt. 14-2 at 16-47, R. 15-46). Rhonda appealed the ALJ's decision, and, on May 20, 2020, the Appeals Council denied Rhonda's request for review, making the ALJ's decision final. (Dkt. 14-2 at 2-4, R. 1-3). Rhonda now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).[3] To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she

---

[3] In general, the legal standards for both DIB and SSI claims are the same, however, separate, parallel statutes and regulations exist for each. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520. (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v.*

3

*Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v.*

*Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Rhonda is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his

5

reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Rhonda was forty-nine years old as of her alleged onset date of October 1, 2007. (Dkt. 14-2 at 59, R. 58). She has a high school diploma. (Dkt. 14-6. at 20, R. 358). She has past relevant work history as an accounts payable clerk and a mailroom worker. (Id.).

#### B. ALJ Decision

In determining whether Rhonda qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Rhonda was not disabled. (Dkt. 14-2 at 47, R. 46). At Step One, the ALJ found that Rhonda had not engaged in substantial gainful activity since her alleged onset date of October 1, 2007. (Id. at 23, R. 22).

At Step Two, the ALJ found that Rhonda had no severe impairments as of her last insured date of December 31, 2012. (Dkt. 14-2 at 23, R. 22). Since the date last insured through May 25, 2014, [4] the ALJ concluded that Rhonda had no severe impairments. (Id. at 24, R. 23). Between May 25, 2014 and June 30, 2017, the prescribed ending window for widow's benefits, the ALJ found that Rhonda had severe impairments of non-intractable seizures, mild pulmonary restriction and mild

---

[4] May 25, 2014 is the date of Rhonda's first seizure (Dkt. 14-2 at 30, R. 29).

volume diffusion limitation/obstruction, sleep apnea improved with compliant use of a CPAP, and headaches. (Id).

As to the "paragraph B" criteria, the ALJ found that Rhonda had no limitation in interacting with others, and mild limitations with understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and managing oneself. (Dkt. 14-2 at 27, R. 26).

At Step Three, the ALJ found that Rhonda's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526. (Dkt. 14-2 at 30, R. 29).

After Step Three but before Step Four, the ALJ found that Rhonda had the residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. § 404.1567(b), with the following limitations: lifting, carrying, pushing, and pulling ten pounds frequently and twenty pounds occasionally; sit, stand and/or walk six hours each in an eight hour workday; occasionally bend and stoop in addition to what is already required to sit; occasionally kneel, crouch, and crawl; occasionally use ramps and stairs; no climbing ropes, ladders, or scaffolds; avoid working upon moving surfaces, wet and slippery surfaces, and vibrating surfaces; avoid driving of motor vehicles and heavy machinery; no exposed heights or open and dangerous machinery, such as fast moving exposed blades and open flames; limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases, excessive heat, humidity, and cold, such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator, or sewage plant; avoid work within close

7

proximity to very loud noises (level 5) such as a fire alarm; avoid bright flashing lights, such as strobe light, more than occasionally. (Dkt. 14-2 at 39-40, R. 38-39).

At Step Four, the ALJ concluded that Rhonda is able to perform her past relevant work as an accounts payable clerk. (Dkt. 14-2 at 46, R. 45). The ALJ thus concluded that Rhonda was not disabled. (Id.).

IV. ANALYSIS

The Plaintiff challenges the ALJ's decision on two grounds. First, the Plaintiff argues that the ALJ erred by failing to account for any mental limitations in the RFC. (Dkt. 18 at 1). Second, the Plaintiff argues that the ALJ failed to give adequate consideration or weight to Plaintiff's treating specialist, Dr. Brian Moore, resulting in a flawed RFC. (Id.). The Court first considers the ALJ's treatment of Dr. Moore's opinion before turning to the ALJ's RFC assessment.

A. Dr. Moore

Rhonda argues that ALJ conducted an erroneous evaluation of the opinion of her treating specialist, Dr. Brian Moore, which led to a faulty RFC. (Dkt. 18 at 22-24). Rhonda contends that if Dr. Moore's assigned limitations were incorporated into the RFC, Rhonda would be found incapable of performing her past work and, therefore, would be found disabled. (Id.). The Commissioner maintains that the ALJ's expert analysis is supported by substantial evidence. (Dkt. 19 at 11-21).

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); see 20

C.F.R. § 416.927(c)(2). This so called "treating physician rule," however, was eliminated for claims, such as Rhonda's, filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Nonetheless, the ALJ must still provide a written explanation for his conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion." *Varga v. Kijakazi*, No. 3:20-cv-575-JPK, 2021 WL 5769016, at *3 (N.D. Ind. Dec. 6, 2021).

"Opinion evidence is now governed by 20 C.F.R. § 404.1520. . . (2017)." *Id.* The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c. When considering the persuasiveness of any medical opinion, an ALJ must now consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. *See Inman v. Saul*, No. 1:20-cv-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021). The most important factors are the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *Tammy M. v. Saul*, No. 2:20-cv-285, 2021 WL 2451907, at *7-8 (N.D. Ind. June 16, 2021).

Plaintiff's treating neurologist, Dr. Brian Moore, filled out a Medical Assessment regarding Rhonda's seizures on September 27, 2018. (Dkt. 14-7 at 167-170, R. 650-653). Dr. Moore indicated that he had seen Rhonda every six months to a year since 2014, Rhonda experienced 1-2 seizures per month that could occur anytime, also experienced depression and memory problems, would be absent from work about two days per month, would be capable of low stress jobs, would experience good days and bad days, and her anti-seizure medication causes side effects of lethargy and lack of alertness. (Id.).

The ALJ noted that the seizure frequency alleged by Rhonda at the hearing and reported by Dr. Moore in the medical source statement is not well supported by the treatment notes, by treating staff's statements, or by the claimant's own statements at the time of obtaining treatment. (Dkt. 14-2 at 35, R. 34). The ALJ then concluded that Dr. Moore's opinion was not persuasive with respect to the frequency of Rhonda's seizures and her compliance with treatment. (Id. at 37, R. 36). The ALJ's explanation of the consistency and supportability of Dr. Moore's opinion regarding seizure frequency and treatment compliance is supported by substantial evidence, as the ALJ gives sufficient reasons from the record and Rhonda's own testimony to support discounting Dr. Moore's opinion.

The ALJ exhaustively summarized Rhonda's medical records throughout the opinion and also stated that the frequency of Rhonda's seizures "is better borne out by the medical treatment records and the claimant's own statements . . . ." (Dkt. 14-2 at 30, R. 29). The ALJ found the medical records did not support Dr. Moore's contention

that Rhonda had 1-2 seizures per month from May 2014 through January 2016 or experience regular seizure activity from June 2017 through July 2018, but that the medical records did demonstrate that Rhonda had 1-2 seizures per month between January 2016 and June 2017. (Id. at 30-34, R. 29-34). The ALJ also goes on to say that the evidence does not support the level of seizure activity required by Listing 11.02 or the level of absenteeism argued by counsel. (Id. at 38, R. 37). As to side effects from medications, the ALJ states that Rhonda "does not have limitations of function arising from prescription side effects lasting long enough for inclusion in the residual functional capacity." (Id. at 25, R. 24). Additionally, as discussed below, during the Step Two analysis the ALJ dismissed the idea of including any functional mental limitations because of Rhonda's normal exams, limited to no side effects, her testimony and statements to her doctors, and the opinions of the state agency reviewing physicians. (Dkt. 14-2 at 24-30, R. 23-29).

Focusing on the required factors of supportability and consistency, the ALJ's opinion provides sufficient support for his conclusion that Dr. Moore's medical statement is not persuasive, focusing on the required factors of supportability and consistency to do so. While the ALJ's opinion could have been better organized to make for easier review, the Court was able to trace the path of the ALJ's reasoning from the evidence to his conclusions. Thus, the ALJ met his articulation burden and this issue is affirmed.

### B. RFC Analysis

Next, Rhonda relatedly argues that the ALJ erred by including no limitations in the RFC or hypothetical questions presented to the vocational expert to address her mental or learning limitations. (Dkt. 18 at 16). Specifically, Plaintiff contends that the ALJ should have included some functional limitations to address her mild difficulties with concentrating, persisting, and maintaining pace and some learning limitations to address her memory and cognition issues, either of which would have resulted in a finding that she was disabled. (Dkt. 18 at 16-21; Dkt. 20 at 1-5). The Commissioner asserts that the ALJ adequately supported his decision not to include mental limitations. (Dkt. 19 at 21-27).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [his] impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Both an RFC assessment and the

12

hypothetical posed to the vocational expert must account for documented limitations of concentration, persistence, or pace. *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

As noted previously, the ALJ found that Rhonda had mild limitations in three of the "paragraph B" areas – understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Dkt. 14-2 at 27, R. 26). The ALJ extensively summarized the medical evidence regarding Rhonda's mental impairments and then goes on to state:

> She has no more than mild limitations of function in concentration, persistence or pace. In fact, despite complaints of attention deficit disorder or attention deficit hyperactivity disorder, delusions, memory issues, anxiety and depression the medical treatment records do not document ongoing observations of significant deficits in focus or in behavior, mood, affect, perception, perseverance, persistence, concentration, attention, interaction, thought content, thought process, insight and judgment, psychomotor activity or others, lasting twelve months in duration despite treatment. . . . In fact, the record indicates no perceived need for any work-related accommodation of these areas as well.

(Id. at 24-27, R. 23-26).

Here, the ALJ spends several pages in the Step Two analysis discussing all medical evidence of Plaintiff's mental impairments, and specifically states the reasons why any work-related function limitations are not required. (Dkt. 14-2 at 24, R. 23). While it is true that the ALJ rarely mentions Plaintiff's mental impairments after the Step Two analysis, "the Seventh Circuit requires that we read the decision

13

as a whole, rather than demand tidy packing with redundant analyses." *Walter R. v. Saul*, No. 1:18-cv-01042-DLP-SEB, 2019 WL 3773795, at *8 (S.D. Ind. Aug. 12, 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses.")).

    To reach his conclusion, the ALJ cited to Plaintiff's own testimony and reports to her doctors, the absence of mental health treatment or medication, normal mental status exams, no confirmed memory loss, largely normal activities of daily living, and the decisions of the state agency reviewing physicians. (Dkt. 14-2 at 24-27, 44, R. 23-26, 43). Specifically, the ALJ points to Plaintiff statements that she had no side effects from her seizure medication (Dkt. 14-6 at 70, 79, R. 408, 417); normal mental status examinations at doctor's appointments (Dkt. 14-7 at 20, 71, 77, 86, 94, 107, 142, 162, R. 503, 554, 560, 569, 577, 590, 625, 645); and the medical opinions of the state agency reviewing physicians that concludes Plaintiff's mental impairments are non-severe due to the absence of sustained clinical findings or observations enduring for twelve months despite treatment. (Dkt. 14-2 at 24-25, R. 23-24; Dkt. 14-3 at 17-20, 29-31, R. 112-115, 124-127). Although the Plaintiff is correct insofar as the ALJ did not address every piece of evidence, such as a particular mental status examination given to the Plaintiff (Dkt. 20 at 3), the ALJ is not required to address every piece of evidence and, instead, must simply trace the path of his reasoning from the evidence to his conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012). The ALJ has done so here.

V.   **CONCLUSION**

For the reasons detailed herein, the Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 3/17/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.